**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JASMINE PAUL SANCHEZ,

Plaintiff,

v.

MITCHELL SHARP, *et. al.,*

Defendants.

Case No. 3:21-cv-00408-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 32]

     This case involves a civil rights action filed by Plaintiff Jasmine Paul Sanchez ("Sanchez") against Defendant Mitchell Sharp ("Sharp") and David Drummond ("Drummond") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 32, 34.)[2] On April 20, 2023, the Court gave Sanchez notice of Sharp's motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 36.) Despite the Court *sua sponte* granting an extension of time to respond, (ECF No. 38), Sanchez has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 32), be granted, and that Sanchez be deemed a vexatious litigant.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

     Sanchez is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Ely State Prison ("ESP"). (ECF Nos. 6, 7.) On September 9, 2021, proceeding *pro se*, Sanchez filed an inmate civil rights

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 34 consists of Sanchez's medical records filed under seal.

1    complaint pursuant to 42 U.S.C. § 1983, ("Complaint"). (ECF No. 1-1.) On February 16,

2    2022, Sanchez filed his first amended complaint ("FAC"), which is the operative complaint

3    in this case. (ECF No. 7.)

4        Based on the allegations in the FAC, the District Court screened the FAC and

5    allowed Sanchez to proceed on: (1) Claim 1 – Fourteenth Amendment denial of access to

6    grievance procedures against Defendant Sharp based on the February incident; (2) Claim

7    2 – Eighth Amendment excessive force against Defendant Sharp based on the February

8    and March incidents; (3) Claim 3 – First Amendment retaliation against Defendant Sharp

9    based on February incident; and (4) Claim 3 – supervisory liability against Defendant

10   Drummond. (ECF No. 8.)

11       Before the filing of this action, Sanchez filed another, duplicative lawsuit in this court

12   relating to the alleged incidents between him and Sharp in February 2021. *Sanchez v.*

13   *Sharp*, Case No. 3:21-cv-00311-MMD-CLB ("*Sharp I*"). As will be discussed more fully

14   below, the allegations and claims related to the February 2021 incident should be

15   dismissed as duplicative. Accordingly, the Court will focus on the evidence related to the

16   March 2021 excessive force claim and the supervisory liability claim against Drummond.

17       **A.    March 2021 – Excessive Force Claim**

18       The FAC alleges the following as to the excessive force claim: On March 13, 2021,

19   Sharp called Sanchez a "pussy mother fucker" and said, "That's why [I'm] going to keep

20   getting away with fucking [him] off." (ECF No. 7 at 4.) That same day, Sharp smashed

21   Sanchez's hand with a "shield" and told Sanchez that he would "piss on [Sanchez's]

22   property," including his laundry. (*Id.*)

23       The undisputed facts in relation to the March 2021 excessive force claim are as

24   follows. On March 13, 2021, Sharp was working his assigned post as Unit 2 floor officer

25   at ESP. (ECF No. 32-3 at 4; ECF No. 32-10 at 2.) At approximately 5:45 a.m. while

26   delivering breakfast to Sanchez, Sharp instructed Sanchez to free his window of

27   obstructions, hit his light, and back away from the food slot and spin around. (*Id.*) Sanchez

28   complied with orders and his breakfast tray was placed on his food slot. (*Id.*) After Sanchez

pulled his breakfast tray into his cell, he stuck his arm out of the food slot and "captured" the slot. (*Id.*) When inmates put their arm out of the food slot and capture it, not allowing an officer to secure the food slot, hindering work duties, and allowing inmates to throw bodily fluids, the officers say the inmate "captured" the food slot. (ECF No. 32-3 at 4.)

Sharp told Sanchez that he could have his tray/food. (ECF No. 32-3 at 4; ECF No. 32-10 at 2.) Sharp removed the shield and turned his back to walk away from the food slot. (*Id.*) At that time, Sanchez propelled an unknown substance (believed to be urine) out of his food slot, which struck Sharp in the back. (*Id.*) Sanchez then started laughing and said "you can wear my piss all day bitch how you like that." (*Id.*) Another Correctional Officer, Justine Milke, corroborated Sharp's account. (ECF No. 32-10.) Milke was also struck by Sanchez's urine. (*Id.*)

Sharp's declaration in support of the motion for summary judgment indicates that when Sharp attempted to give Sanchez food and he stuck his arm out of the food slot, Sharp believed Sanchez was going to throw bodily fluids at him given his Sanchez's threat earlier that morning and his history of throwing urine on officers through the food slot. Sharp only used force to defend himself and was careful to only use the minimum amount of force necessary, consistent with his training. (ECF No. 32-3 at 4-5.)

No medical records were identified relating to any alleged injuries from any incident on or near March 13, 2021. (*See* ECF No. 34-1 (sealed).) Sanchez filed Grievance 2006-31-21193 relating to events that occurred on March 13, 2021. (ECF No. 32-4 at 4; ECF No. 32-11.) In the grievance, Sanchez does not mention any excessive force or injury to his hand, but rather alleges the charge against him for throwing urine on Sharp and Officer Milke should be reclassified as a MJ40 and not a MJ3. (*Id.*)

According to Sanchez's Inmate Disciplinary History Report, Sanchez has a long disciplinary history based on throwing feces and urine and had "propelling" charges filed against him on, at least, August 4, 2016, August 26, 2016, October 5, 2016, December 27, 2016, January 20, 2017, February 2, 2017, November 10, 2017, May 17, 2018, May 22, 2018, September 19, 2018, December 9, 2018, August 3, 2019, August 16, 2019,

1  September 25, 2019, September 30, 2019, October 4, 2019, January 19, 2020, February

2  13, 2020, March 19, 2020, March 25, 2020, August 2, 2020, August 10, 2020, May 4,

3  2021, May 9, 2021, August 1, 2021, August 21, 2021, and October 6, 2021. (ECF No. 32-

4  6.)

5        **B.    Supervisory Liability Claim**

6        The FAC alleges the following as to the supervisory liability claim: Ever since Sharp

7  began harassing Sanchez, Sanchez has been submitting kites and grievances to

8  Associate Warden David Drummond in an attempt to "keep [Sharp] away" from him. (ECF

9  No. 7 at 6.) Drummond ignored these requests even after Sharp admitted in a "write up"

10  that he had assaulted Sanchez for no reason. (*Id.*) Despite knowing that Sharp was

11  targeting Sanchez, Drummond declined to act because he wanted Sanchez to violate his

12  "global settlement for a transfer" and thus "continue being a target for Ely State Prison

13  staff." (*Id.*)

14        The undisputed facts in relation to the supervisory liability claim are as follows.

15  Drummond is currently employed as an Associate Warden at ESP. (ECF No. 32-4 at 2.)

16  While Drummond had some responsibility for reviewing certain grievances filed by

17  Sanchez, none of the grievances submitted related to "keeping Sharp away". (*See* ECF

18  No. 32-8.) Further, no grievances were identified relating to any specific event by Sharp

19  on March 21, 2021, April 9, 2021, or April 25, 2021. (*Id.*; ECF No. 32-4 at 4.) Sanchez filed

20  Grievance 2006-31-21193 relating to events that occurred on March 13, 2021. (ECF No.

21  32-4 at 4; ECF No. 32-11.) In the grievance, Sanchez does not mention any excessive

22  force or injury to his hand, but rather alleges the charge against him for throwing urine on

23  Sharp and Officer Milke should be reclassified as a MJ40 and not a MJ3. (*Id.*)  Drummond

24  was not personally involved in reviewing Grievance 2006-31-21193. (*Id.*)

25        In his declaration in support of the motion for summary judgment, Drummond

26  asserts that he had no knowledge of any global settlement for transfer relating to Sanchez

27  and took no action or inaction based on such. (ECF No. 32-4.)

28  ///

### C.    Defendants' Motion for Summary Judgment

On July 10, 2023, Defendants filed the instant motion for summary judgment arguing summary judgment is warranted based on: (1) sovereign immunity; (2) lack of personal participation; (3) failure to exhaust administrative remedies; (4) the anti-claim splitting doctrine; (5) the lack of any injury; and, (6) qualified immunity. (ECF No. 32.)

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

///

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf*

*Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III.    DISCUSSION

### A.    February 2021 Allegations

As discussed above, Sanchez filed a duplicative lawsuit against Sharp in this district, which included all of the same allegations in relation to the February 2021 incident. *See Sharp v. Sanchez*, Case No. 3:21-cv-00311-MMD-CLB ("*Sharp I*"). In *Sharp I*, the District Court allowed Sanchez to proceed with a conditions of confinement claim and an excessive force claim. (ECF No. 9 (*Sharp I*).) Ultimately, this Court recommended that Sharp's motion for summary judgment be granted in its entirety, and the District Court adopted and accepted the recommendation, dismissed the case, and entered judgment

1    in favor of Sharp. (ECF Nos. 63, 64, 65 (*Sharp I*).)

2          District courts retain broad discretion to control their dockets and "[i]n the exercise
3    of that power they may impose sanctions including, where appropriate, default or
4    dismissal." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir.
5    1986) (per curiam); *see also Link v. Wabash R.R.*, 370 U.S. 626, 629–30 (1962). After
6    weighing the equities of the case, the district court may exercise its discretion to dismiss
7    a duplicative later-filed action. *See Walton v. Eaton Corp.*, 563 F.2d 66, 70-71 (3d Cir.
8    1977) (en banc) *cited with approval in Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th
9    Cir. 1997). Plaintiffs generally have "no right to maintain two separate actions involving
10   the same subject matter at the same time in the same court and against the same
11   defendant." *Walton*, 563 F.2d at 70.

12         To determine whether the second action is duplicative of the first, the Court
13   examines whether the causes of action and relief sought, as well as the parties or privies
14   to the action, are the same. *See The Haytian Republic*, 154 U.S. 118, 124 (1984) ("There
15   must be the same parties, or, at least, such as represent the same interests; there must
16   be the same rights asserted and the same relief prayed for; the relief must be founded
17   upon the same facts, and the … essential basis, of the relief sought must be the same."
18   (internal quotations marks omitted)). "[A] suit is duplicative if the claims, parties, and
19   available relief do not significantly differ between the two actions." *Adams v. Cal. Dep't of
20   Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v.
21   Sturgell*, 553 U.S. 880 (2008). "Whether two events are part of the same transaction or
22   series depends on whether they are related to the same set of facts and whether they
23   could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th
24   Cir. 1992) (citing Restatement (Second) of Judgments § 24(1) (1982)).

25         Although the Court interpreted Sanchez's allegations differently through the
26   screening process, the factual allegations presented in both cases were nearly identical.
27   "Whether two events are part of the same transaction or series depends on whether they
28   are related to the same set of facts and whether they could conveniently be tried together."

*Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement (Second) of Judgments § 24(1) (1982)). Thus, because the complaints in *Sharp I* and the instant case contained nearly identical factual allegations, the Court finds the following claims to be duplicative and subject to dismissal: (1) Claim 1, alleging Fourteenth Amendment denial of access to grievance procedures against Sharp; (2) Claim 2, alleging Eighth Amendment excessive force against Sharp; and (3) Claim 3, alleging First Amendment retaliation against Sharp.

The Court will now address the remaining excessive force and supervisory liability claims.

### B.    Excessive Force

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners

alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Sharp contends he used reasonable force under the circumstances. (ECF No. 32 at 16.) Sharp trapped Sanchez's arm with his shield in response to Sanchez sticking his arm out, which Sharp perceived as a threat due to Sanchez's long history of propelling urine and other materials out of his cell through the food slot. Importantly, Sanchez did not suffer any injury and did not request any medical treatment. These facts were corroborated by several accounts of the same incident. Sharp contends that briefly trapping Sanchez's arm with the shield cannot be considered unreasonable in these circumstances. (*Id.*)

As discussed above, the undisputed facts, uncontradicted by Sanchez, are as follows. On March 13, 2021, Sharp was working his assigned post as Unit 2 floor officer at ESP. (ECF No. 32-3 at 4; ECF No. 32-10 at 2.) At approximately 5:45 a.m. while delivering breakfast to Sanchez, Sharp instructed Sanchez to free his window of obstructions, hit his light, and back away from the food slot and spin around. (*Id.*) Sanchez

complied with orders and his breakfast tray was placed on his food slot. (*Id.*) After Sanchez pulled his breakfast tray into his cell, he stuck his arm out of the food slot and "captured" the slot. (*Id.*) When inmates put their arm out of the food slot and capture it, not allowing an officer to secure the food slot, hindering work duties, and allowing inmates to throw bodily fluids, the officers say the inmate "captured" the food slot. (ECF No. 32-3 at 4.)

Sharp told Sanchez that he could have his tray/food. (ECF No. 32-3 at 4; ECF No. 32-10 at 2.) Sharp removed the shield and turned his back to walk away from the food slot. (*Id.*) At that time, Sanchez propelled an unknown substance (believed to be urine) out of his food slot, which struck Sharp in the back. (*Id.*) Sanchez then started laughing and said "you can wear my piss all day bitch how you like that." (*Id.*) Another Correctional Officer, Justine Milke, corroborated Sharp's account. (ECF No. 32-10.) Milke was also struck by Sanchez's urine. (*Id.*)

Sharp's declaration in support of the motion for summary judgment indicates that when Sharp attempted to give Sanchez food and he stuck his arm out of the food slot, Sharp believed Sanchez was going to throw bodily fluids at him given his Sanchez's threat earlier that morning and his history of throwing urine on officers through the food slot. Sharp only used force to defend himself and was careful to only use the minimum amount of force necessary, consistent with his training. (ECF No. 32-3 at 4-5.)

No medical records were identified relating to any alleged injuries from any incident on or near March 13, 2021. (*See* ECF No. 34-1 (sealed).) Sanchez filed Grievance 2006-31-21193 relating to events that occurred on March 13, 2021. (ECF No. 32-4 at 4; ECF No. 32-11.) In the grievance, Sanchez does not mention any excessive force or injury to his hand, but rather alleges the charge against him for throwing urine on Sharp and Officer Milke should be reclassified as a MJ40 and not a MJ3. (*Id.*)

Here, based on the undisputed evidence, all five *Hudson* factors objectively weigh against finding an Eighth Amendment violation. *See Hudson*, 503 U.S. at 6-7. First, using force generally was necessary. Sanchez implicitly threatened Sharp when he stuck his

hand out of his food slot, especially in light of Sanchez propelling urine at Sharp and his long disciplinary history based on actually throwing feces and urine.

Second, the amount of force used was proportional to the need. Sharp used minimal force to hold Sanchez's arm down to prevent him from throwing feces or urine. There is no evidence that Sharp used other, greater force to accomplish this. Thus, the force used was objectively minimal and proportional to the need to gain control of Sanchez's arm. Third, there is no report of injuries as a result of the alleged force. Sanchez's injuries were de minimis. Thus, both the force Sharp used and Sanchez's injuries were insignificant here.

Next, the threat Sharp reasonably perceived was significant. As discussed above, Sanchez had previously threatened, had actually thrown feces and urine in the past, and actually threw urine on this occasion. Thus, when Sanchez failed to follow Sharp's order to keep himself free of the food slot, a reasonable officer would have felt threatened. Finally, Sharp made efforts to temper the severity of his use of force. However, officers are sometimes required to use force if an inmate refuses a valid order. *Whitley*, 475 U.S. at 320. Sharp had already instructed Sanchez to keep himself clear of the food slot, and only resorted to using his shield after Sanchez refused that order.

Based on the evidence before the Court, all five of the relevant *Hudson* factors weight in favor of finding that Sharp did not use excessive force. There is no dispute as to the minimal amount of force used, the circumstances under which it was applied, and the lack of injuries to Sanchez as a result of the minimal force. As such, there is no genuine issue of material fact as to the merits of the excessive force claim. Sanchez does not, and cannot, show that Sharp applied force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6. To the contrary, Sharp applied a minimal amount of force necessary in a good-faith effort to maintain order, and it was not done maliciously or sadistically to cause harm.

Accordingly, the Court recommends Defendants' motion for summary judgment be granted as to the excessive force claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.     Supervisor Liability

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his [or her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Id.*; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Id.* at 1207. As such, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id.*

Sanchez's supervisor liability claim is premised on allegations that Drummond ignored Sanchez's complaints regarding Sharp's alleged unconstitutional conduct. (*See* ECF No. 8 at 9-10.) However, as discussed above, Sharp's conduct in relation to the alleged excessive force was not unconstitutional. Additionally, there is no evidence that Drummond personally participated in any alleged action against Sanchez. Further, in his declaration in support of the motion for summary judgment, Drummond asserts that he had no knowledge of any global settlement for transfer relating to Sanchez and took no action or inaction based on such. (ECF No. 32-4.) In sum, there is no evidence to support a supervisory liability claim against Drummond, as there is no evidence of any constitutional deprivation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

1   Accordingly, the Court recommends Defendants' motion for summary judgment be

2   granted as to the supervisory liability claim.[3]

3   **IV.   RECOMMENDATION TO DEEM SANCHEZ A VEXATIOUS LITIGANT**

4   Next, the Court considers whether Sanchez should be deemed a vexatious litigant

5   given his history of improper filings and abuse of the Court's processes. A district court

6   has the "inherent power to enter pre-filing orders against vexatious litigants." *Molski v.*

7   *Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (citing 28 U.S.C. §

8   165l(a)). Because a pre-filing order implicates a litigant's right of access to the courts, the

9   court should enter such an extreme remedy "only after a cautious review of the pertinent

10  circumstances." *Id.* Prior to entering a pre-filing order, the court must give the litigant

11  notice and an opportunity to be heard. *Id.* (citing *De Long v. Hennessey*, 912 F.2d 1144,

12  1147 (9th Cir. 1990)).

13  The Court must set forth an adequate record for review and make "substantive

14  findings about the frivolous or harassing nature of the plaintiff's litigation." *Id.* "An

15  adequate record for review should include a listing of all the cases and motions that led

16  the district court to conclude that a vexatious litigant order was needed.'" *Id.* at 1059

17  (quoting *De Long*, 912 F.2d at 1147). "Flagrant abuse of the judicial process cannot be

18  tolerated because it enables one person to preempt the use of judicial time that properly

19  could be used to consider the meritorious claims of other litigants." *De Long*, 912 F.2d at

20  1148. To determine whether the litigant's conduct is frivolous or harassing, the court

21  evaluates "both the number and content of the filings as indicia of the frivolousness of the

22  litigant's claims." *Id.* (quotation omitted).

23  A pre-filing order "must be narrowly tailored to closely fit the specific vice

24  encountered." *Id.* (quotation omitted). Whether to enter a pre-filing order against a

25  vexatious litigant lies within the court's discretion. *Id.* at 1056. The Court should examine

26  _____

27  [3]   Because the Court recommends that the motion for summary judgment be granted
28  in its entirety based on a finding that no constitutional violations occurred, it need not
    address Defendants' arguments, such as failure to exhaust and qualified immunity.

five factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Williams v. Nat'l Default Servicing Corp.*, No. 2:16-cv-1860-GMN-NJK, 2017 U.S. Dist. LEXIS 4111, at 12-14 (D. Nev. Jan. 10, 2017), citing to *Molski v. Mandarin Touch Rest.*, 347 F.Supp.2d 860, 863-64 (C.D. Cal. 2004).

Sanchez has filed multiple cases *pro se* in the District of Nevada, and the Court takes judicial notice of its prior records in these matters:

| | | |
|---|---|---|
| 1. | *Sanchez v. Ely State Prison, et al*, 3:18-cv-00317-MMD-CLB | Closed on 12/15/2020 Settled via Global Settlement Conference |
| 2. | *Sanchez v. Ely State Prison*, 3:18-cv-00373-MMD-WGC | Closed on 9/17/2019 Dismissed lack of jurisdiction (ECF No. 6) and appeal deemed frivolous (ECF No. 14) |
| 3. | *Sanchez v. Gittere, et al*, 3:18-cv-00475-MMD-WGC | Closed on 12/15/2020 Settled via Global Settlement Conference |
| 4. | *Sanchez v. Ely State Prison, et al*, 3:18-cv-00590-MMD-WGC | Closed on 1/24/2019 Dismissed for failure to file IFP or pay filing fee (ECF No. 4) |
| 5. | *Sanchez v. Bralower, et al*, 3:19-cv-00431-MMD-WGC | Closed on 12/15/2020 Settled via Global Settlement Conference |
| 6. | *Sanchez v. Gittere, et al*, 3:19-cv-00432-MMD-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 7. | *Sanchez v. Jones, et al*, 3:19-cv-00447-MMD-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 8. | *Sanchez v. Kirchen, et al*, 3:19-cv-00448-MMD-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |

| | | |
|---|---|---|
| 9. | *Sanchez v. Homan, et al*, 3:19-cv-00481-MMD-WGC | Closed on 8/24/2020 Dismissed for failure to state a claim/amendment futile (ECF No. 6) |
| 10. | *Sanchez v. Gittere, et al*, 3:19-cv-00492-MMD-WGC | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 11. | *Sanchez v. Homan*, 3:19-cv-00527-MMD-WGC | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 12. | *Sanchez v. Rose*, 3:19-cv-00557-MMD-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 13. | *Sanchez v. Manning*, 3:19-cv-00757-RCJ-CLB | Closed on 12/16/2020 Settled via on Global Settlement Conference |
| 14. | *Sanchez v. Wickham*, 3:20-cv-00291-MMD-WGC | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 15. | *Sanchez v. Homan, et al*, 3:20-cv-00319-APG-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 16. | *Sanchez v. Rose, et al*, 3:20-cv-00577-RCJ-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 17. | *Sanchez v. Reubart*, 3:20-cv-00610-MMD-CLB | Closed on 12/15/2020 Settled via on Global Settlement Conference |
| 18. | *Sanchez v. Ely State Prison, et al*, 3:21-cv-00292-MMD-CLB | Closed on 2/28/2022 Dismissed for failure to state a claim/amendment futile (ECF No. 11) and appeal deemed frivolous (ECF No. 15) |
| 19. | *Sanchez v. Sharp, et al*, 3:21-cv-00311-MMD-CLB | Closed on 8/22/2023 R&R to grant motion for summary judgment in its entirety based on finding of no constitutional violations (ECF No. 63); adopted by DJ (ECF No. 64) |
| 20. | *Sanchez v. Johnson*, 3:21-cv-00362-ART-CSD | Case pending No activity since 4/11/2023 |
| 21. | *Sanchez v. Sharp, et al*, 3:21-cv-00408-MMD-CLB | Instant Case – R&R to grant summary judgment in its entirety based on filing |

| | | |
|---|---|---|
| | | of duplicative lawsuit and finding of no constitutional violations |
| 22. | *Sanchez v. Rose*, 3:21-cv-00475-MMD-CLB | Closed on 5/16/2022 Dismissed for failure to state a claim/amendment futile (ECF No. 10) and appeal deemed frivolous (ECF No. 16) |
| 23. | *Sanchez v. Ely State Prison Medical*, 3:22-cv-00076-ART-CSD | Case pending No activity since 5/26/2023 |
| 24. | *Sanchez v. Rigney*, 3:22-cv-00109-ART-CLB | R&R pending – recommendation to grant summary judgment in its entirety based on finding of no constitutional violations (ECF No. 35) |
| 25. | *Sanchez v. Reubart*, 3:22-cv-00133-MMD-CLB | Closed on 5/6/2022 Dismissed for failure to pay filing fee (ECF No. 8) |
| 26. | *Sanchez v. Saucedo*, et al, 3:22-cv-00141-ART-CLB | R&R pending – recommendation to grant summary judgment in its entirety based on finding of no constitutional violations (ECF No. 35) |
| 27. | *Sanchez v. Reubart*, 3:22-cv-00167-RCJ-CLB | Closed on 2/7/2023 Dismissed for failure to pay filing fee (ECF No. 4) |
| 28. | *Sanchez v. Rigney, et al*, 3:22-cv-00259-MMD-CSD | Closed on 1/27/2023 R&R to dismiss following show cause hearing regarding failure to follow court orders and appear for hearing (ECF No. 51); adopted by DJ (ECF No. 61) |
| 29. | *Sanchez v. Cornutt, et al*, 3:23-cv-00021-ART-CLB | Closed on 6/16/2023 Dismissed for failure to pay filing fee (ECF No. 7) |
| 30. | *Sanchez v. Denney*, 3:23-cv-0052-MMD-CLB | Closed on 4/3/2023 Dismissed for failure to pay filing fee (ECF No. 9) |
| 31. | *Sanchez v. Pickens, et al*, 3:23-cv-0089-ART-CLB | Closed on 7/18/2023 Dismissed for failure to pay filing fee (ECF No. 8) |
| 32. | *Sanchez v. Baldwin et al*, 3:23-cv-00126-MMD-EJY | Closed on 4/10/2023 Dismissed for failure to state a claim (ECF No. 10) |
| 33. | *Sanchez v. Reubart*, | Closed on 7/6/2023 |

| 2:23-cv-00616-GMN-DJA | Dismissed for failure to pay filing fee (ECF No. 6) |
|---|---|

As exemplified in the above table, the majority of Sanchez's cases have been dismissed or have ultimately been found to lack merit. On at least three prior occasions, this Court and the Ninth Circuit Court of Appeals have dismissed civil actions or appeals commenced by Sanchez while in detention or incarcerated as frivolous or for failure to state a claim upon which any relief may be granted. *See Sanchez v. Ely State Prison*, Case No. 3:18-cv-00373-MMD-WGC, ECF No. 14 (appeal dismissed by the appellate court as frivolous (No. 19-17131)); *Sanchez v. Homan*, Case No. 3:19-cv-00481-MMD-WGC (action dismissed by the district court for failure to state a claim); *Sanchez v. Ely State Prison*, Case No. 3:21-cv-00292-MMD-CLB (action dismissed by the district court for failure to state a claim). Thus, Sanchez has three strikes pursuant to 28 U.S.C. § 1915(g) and may no longer proceed *in forma pauperis* unless he is under imminent danger of a serious physical injury.

In addition to filing a variety of frivolous and improper lawsuits, Sanchez has routinely refused to participate in, or adhere to the Court's rules and orders, in many of his lawsuits. For example, Sanchez has refused to accept service of documents filed in several of his cases. *See, e.g., Sanchez v. Sharp*, Case No. 3:21-cv-00311-MMD-CLB (refused service related to numerous documents – ECF Nos. 14, 16, 18, 43, 52, 54, and was warned that his failure to accept service of would result in sanctions – ECF No. 30); Sanchez v. Ely State Prison Medical, Case No. 3:22-cv-00076-ART-CSD (refused service related to numerous documents – ECF Nos. 14, 16, 21, 24, 25, 27, 30); *Sanchez v. Rigney*, Case No. 3:22-cv-00259-MMD-CSD (refused service related to numerous documents – ECF Nos. 53, 54, 55, 75, 76, 78, 79, 81, 86).

Moreover, Sanchez failed to appear for hearings in several of his cases. *See Sanchez v. Sharp*, Case No. 3:21-cv-00311-MMD-CLB (failed to appear for status conference to discuss setting a global settlement - ECF No. 60); *Sanchez v. Rigney*, Case No. 3:22-cv-00259-MMD-CSD (failed to appear for show cause hearing regarding failure

to follow court orders – ECF No. 51).

Moreover, Sanchez has failed to prosecute several of his cases, including failing to oppose motions for summary judgment in several of his cases—including the instant case.

"No one, rich or poor, is entitled to abuse the judicial process." *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989). Sanchez has a history of filing *pro se* vexatious and duplicative lawsuits. Sanchez does not have a good faith motive in pursuing frivolous litigation and he has abused the judicial process by filing lawsuits that he knows will be dismissed. Moreover, Sanchez's actions have posed an unnecessary burden on this Court and are a vexatious abuse of the judicial process. Although Sanchez has received three strikes pursuant to the PLRA, this has not deterred him from continuing in his improper actions nor has it curtailed his abuse of the judicial process. Therefore, Sanchez is likely to continue his abuse of the judicial process unless additional steps are taken. Thus, the Cout recommends that an order be entered deeming Sanchez a vexatious litigant and requiring Sanchez to seek leave prior to filing new lawsuits as described below. This recommendation is narrowly tailored because Sanchez will still have access to this Court by requesting leave. Although the Court is raising this issue *sua sponte*, Sanchez will have notice and a chance to be heard through the objection process.

### 1. Enjoining Vexatious Litigant

If a litigant is deemed vexatious, he will be enjoined from filing any further action or papers in this district without first obtaining leave of the Chief Judge of this court. In order to file any papers, the vexatious litigant must first file an application for leave. The application must be supported by a declaration of plaintiff stating: (1) that the matters asserted in the new complaint or papers have never been raised and disposed of on the merits by any court; (2) that the claim or claims are not frivolous or made in bad faith; and (3) that he has conducted a reasonable investigation of the facts and investigation supports his claim or claims. A copy of the order deeming the litigant vexatious must be attached to any application. Failure to comply will be sufficient grounds for denial of the

application. *See De Long*, 912 F.2d at 1146-47.

## V.    CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Sharp's motion for summary judgment, (ECF No. 32), be grant, and Sanchez be deemed a vexatious litigant.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.    RECOMMENDATION

**IT IS RECOMMENDED** that Sharp's motion for summary judgment, (ECF No. 32), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**IT IS FURTHER RECOMMENDED** that Jasmine Sanchez be deemed a **VEXATIOUS LITIGANT** pursuant to 28 U.S.C. § 1651(a) and be **ENJOINED** and **PROHIBITED** from filing any complaint, petition, or other document in this Court without first obtaining leave of this Court.

**IT IS FURTHER RECOMMENDED** that the Court enter an order stating that if Jasmine Sanchez intends to file any papers with the court, he must first seek **LEAVE** of the Chief Judge of this Court in accordance with the procedure outlined above.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court be authorized to reject or refuse to file, and/or discard any new complaint, petition, document on a closed case,

1  or any other document submitted without first seeking leave of the Chief Judge as stated

2  above.

3  **DATED**: September 21, 2023.

4

5  _____

   **UNITED STATES MAGISTRATE JUDGE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28